1

2

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

3

4

JUSTIN OWENS,

5                           Plaintiff,

           vs.

6

STATE OF NEVADA, *et al.*,

7

8                           Defendants.

Case No.: 2:22-cv-01986-GMN-EJY

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

9          Pending before the Court is the Motion for Summary Judgment, (ECF No. 20), filed by

10   Defendants Ronald Oliver, James Scally, and Calvin Johnson.  Plaintiff Justin Owens did not

11   file a Response.[1]  For the reasons discussed below, the Court GRANTS Defendants' Motion for

12   Summary Judgment.

13          Also pending before the Court is the Motion for Leave to File Document Under Seal,

14   (ECF No. 21).  Plaintiff did not file a Response.  For good cause appearing, the Court

15   GRANTS the Motion for Leave to File Document Under Seal.[2]

16   **I.    BACKGROUND**

17          This action began with a *pro se* civil rights Complaint filed pursuant to 42 U.S.C. § 1983

18   by a state prisoner. (*See generally* Compl., ECF No. 1-1).  Plaintiff was housed at Ely State

19   Prison ("ESP") where he was being programmed as a Level-I inmate with Level-I privileges

20

21   [1] A copy of the Motion for Summary Judgment was mailed to Plaintiff in May 2024 but was returned
undelivered because Plaintiff refused to sign for it. (*See* ECF No. 27).  A Settlement Conference occurred in
22   September 2024 where Plaintiff learned of the Motion for Summary Judgment, but Plaintiff still did not file a
Response.  Thus, the Court finds the Motion to be unopposed by Plaintiff.
23   [2] It is well established in the Ninth Circuit that there is a strong presumption of public access to judicial records.
*See Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto. Ins. Co.*,
24   331 F.3d 1122, 1135 (9th Cir. 2003).  A party seeking to file documents under seal bears the burden of
overcoming that presumption. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting
25   *Kamakana*, 447 F.3d at 1178).  Defendants move to file Plaintiff's Case Note Printout under seal because
Plaintiff's health, well-being, or safety could be endangered if it was disclosed. (Mot. Seal 2:14–20).  The Court
agrees with Defendants and thus, the Motion for Leave to File Document Under Seal is GRANTED.

before he was transferred to High Desert State Prison ("HDSP") in August 2020. (Historical Bed Assignments at 5, Ex. A to Mot. Summ. J., ECF No. 20-1); (Case Note Printout Report (sealed) at 10, Ex. B to Mot. Summ. J., ECF No. 22-1); (Offender Movement Report at 3, Ex. C to Mot. Summ. J., ECF No. 20-2). Plaintiff was present for a Reception/Due Process hearing the day after he arrived at HDSP. (Case Note Printout (sealed) at 10, Ex. B to Mot. Summ. J.). During the hearing, Plaintiff had the opportunity to ask questions and was advised of the status of the unit he was being housed in at HDSP. (*See id*.). He was further advised that he would remain in Administrative Segregation/Close Custody pending a full classification committee ("FCC") hearing. (*Id*.). A follow-up review was set for 30 days. (*Id*.)

In September 2020, Plaintiff was present for an FCC hearing, where HDSP determined that based on Plaintiff's points, he would remain in the same unit. (*Id*. at 11). HDSP converted Plaintiff's unit into a Special Management Unit ("SMU"). (*See generally* HDSP Operational Procedure 507A, Ex. D. to Mot. Summ. J., ECF No. 20-3). A few weeks later, Plaintiff was present for a periodic review where HDSP determined that Plaintiff would remain in his current unit based on his classification and points. (Case Note Printout Report (sealed) at 11, Ex. B to Mot. Summ. J.).

In October 2020, Plaintiff filed an informal grievance, alleging that he and the other offenders transferred from ESP were being treated worse than inmates in segregation. (Inmate Grievance History at 13, Ex. E. to Mot. Summ. J. ECF No. 20-4). The grievance also alleged that he had been locked down with no yard access for over 45 days. (*Id.*). Owens filed a second informal grievance later that month claiming that he had not received a response to his first informal grievance. *Id*. These informal grievances were responded to in April and August 2021. (*Id*.). The responses indicated that HDSP placed the unit on lockdown on different occasions due to incident/emergency situations. (*Id*.).

In August 2021, Plaintiff filed a level one grievance. (*Id*.).  Plaintiff received a response indicating the reasons for why his unit was placed on lockdown. (*Id*. at 14).  It further indicated the reason for why Plaintiff was housed in his HDSP unit following his transfer from ESP. (*Id*.).  Plaintiff then filed two level two grievances in October 2021 and May 2022, respectively, reiterating that he believed he was wrongfully placed in lockdown without yard access. (*Id*.).  The response to the second level two grievance reiterated the same rationale and explanation that had been provided to Plaintiff throughout the grievance process. (*See id*. at 12–14).

Plaintiff initiated the present lawsuit alleging a violation of procedural due process, freedom of religion, and a petition for a redress of grievances. (*See generally* Compl.).  Plaintiff's Complaint was screened, and the only remaining claim is Plaintiff's due process claim against Defendants Johnson, Oliver, and Scally. (*See* Screening Order 1:20–22, ECF No. 5).  Defendants now move for summary judgment.

## II.    <u>LEGAL STANDARD</u>

A court cannot grant a summary judgment motion merely because it is unopposed. *Henry v. Gill Indus., Inc*., 983 F.2d 943, 949–50 (9th Cir.1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition).  Even without an opposition, the court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950; *see also Clarendon Am. Ins. Co. v. Jai Thai Enters., LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash. 2009).

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

1    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

2    may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3    A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

4    return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

5    genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

6    differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

7    1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary

8    judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving

9    party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*

10   *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to

11   isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477

12   U.S. 317, 323–24 (1986).

13          In determining summary judgment, a court applies a burden-shifting analysis.  "When

14   the party moving for summary judgment would bear the burden of proof at trial, it must come

15   forward with evidence which would entitle it to a directed verdict if the evidence went

16   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

17   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

18   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

19   quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

20   the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

21   evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

22   that the nonmoving party failed to make a showing sufficient to establish an element essential

23   to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477

24   U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be

25

denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

1

## III.    <u>DISCUSSION</u>

2  Defendants move for summary judgment on Plaintiff's due process claim. (*See generally*

3  Mot. Summ. J., ECF No. 20).  For summary judgment to be appropriate, Defendants must

4  either present evidence to negate an essential element of Plaintiff's case or demonstrate that

5  Plaintiff failed to make a showing sufficient to establish an element essential to that case.  If

6  Defendants meet their initial burden, the burden would then shift to Plaintiff to show that a

7  genuine dispute of material fact exists.  Because Plaintiff failed to respond to Defendants'

8  Motion, the Court evaluates the evidence to determine whether the standard has been satisfied.

9  Defendants argue that they are entitled to qualified immunity, and as such, summary

10  judgment should be granted in their favor. (Mot. Summ. J. 8:4–5).  "The doctrine of qualified

11  immunity protects government officials 'from liability for civil damages insofar as their

12  conduct does not violate clearly established statutory or constitutional rights of which a

13  reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To

14  overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official

15  violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

16  time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Although

17  qualified immunity is a defense raised by the defendant, "[i]t is the plaintiff who 'bears the

18  burden of showing that the rights allegedly violated were clearly established.'" *Shafer v. Cnty.*

19  *of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d

20  1146, 1157 (9th Cir. 2000)).

21  Here, construing the facts in the light most favorable to Plaintiff, the Court finds no

22  constitutional violation occurred.  Defendants argue, and the Court agrees, that Plaintiff's

23  constitutional right to due process was not violated because Plaintiff was provided with four

24  review opportunities when he was transferred from ESP to HDSP. (Mot. Summ. J. 11:10–18).

25

The Fourteenth Amendment to the U.S. Constitution states that no state shall "deprive any person of life, liberty, or property without due process of law. . . ." U.S. Const. amend. XIV, sec. 1.  Liberty interests protected by the Fourteenth Amendment may arise from two sources: (1) the due process clause or (2) the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).  As for the due process clause, the Supreme Court has held that the clause itself does not create a liberty interest in remaining within the general prison population or being free from administrative segregation. *Id.* at 468.  The Supreme Court has also held that there is no liberty interest implicated in a prison's reclassification and transfer decisions. *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976).  And as for liberty interests created by the state, regulations governing daily operations of a prison system do not confer any liberty interest in and of themselves. *Hewitt* 459 U.S. at 469–471.[3]  For the purposes of this Order, however, the Court need not determine whether Plaintiff had a liberty interest in being placed in general population or a liberty interest in yard access, because due process was afforded to Plaintiff.

Indeed, if there is a liberty interest, due process would require that an inmate placed in segregated housing be provided, within a reasonable time after such placement, with an informal, non-adversary review of the evidence justifying the decision to segregate the inmate to satisfy due process. *See id.* at 476.  After placement in segregation, prison officials must periodically review the initial placement. *See id.* at 477 n. 9.  Here, Defendants' actions meet the due process requirements.  Plaintiff was present for a Reception/Due Process hearing the day after he arrived at HDSP, and HDSP provided him with the opportunity to ask questions and be advised of the status of the unit he was being housed in at HDSP. (Case Note Printout

---

[3] Rather, a liberty interest is created by "repeated use of explicitly mandatory language in connection with requiring specific substantive predicates." *Id.* at 471.  Thus, the use of language with "unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed and that administrative segregation will not occur absent specified substantive predicates—viz., 'the need for control,' or 'the threat of a serious disturbance'" will create a liberty interest. *Id.* at 471–72.

(sealed) at 10, Ex. B to Mot. Summ. J.).  He was further advised that he would remain in Administrative Segregation/Close Custody pending an FCC hearing, and a follow-up review was set for 30 days. (*Id*.).  Plaintiff was also present for an FCC hearing, where it was determined that based on Plaintiff's points, he would remain in the same unit. (*Id*. at 11).  A few weeks later, Plaintiff was present for a periodic review where it was determined that he would remain in his current unit based on his classification and points. (*Id*.).  Moreover, HDSP officials answered Plaintiff's grievances and provided him with a reasonable explanation for why he was not receiving yard time.  Thus, the Court finds that Defendants did not violate the due process clause.

Accordingly, Defendants have met their burden by presenting evidence to negate an essential element of Plaintiff's case, *i.e.*, that they did not violate a constitutional right and as such they are entitled to qualified immunity.  The Court need not address prong two of the qualified immunity analysis.  Furthermore, the Court finds no evidence in the record that would satisfy Plaintiff's burden of establishing that there is a genuine dispute of material fact.  As such, Defendants' Motion for Summary Judgment is **GRANTED**.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 20), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Document Under Seal, (ECF No. 21), is **GRANTED**.

The Clerk of Court is kindly directed to close the case.

**DATED** this  16  day of January, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court